UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Brenda K. Taite,
    Plaintiff

    v.                                      Civil No. 08-cv-258-SM
                                              Opinion No. 2009 DNH 005
James B. Peake, Secretary,
Department of Veterans Affairs,
    Defendant

**O R D E R**

Brenda Taite is suing her former employer in six counts, asserting claims under the Fair Labor Standards Act (Count I), the Rehabilitation Act (Count II),[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Count III), and the common law of New Hampshire (Counts IV, V, and VI). Before the court is defendant's motion to dismiss Counts IV, V, and VI. Plaintiff objects. Defendant's motion is granted in part and denied in part.

**Background**

The relevant facts, drawn from plaintiff's complaint, are as follows. Brenda Taite is of African-American descent. She began

---

[1] Because the United States is not an employer for purposes of the Americans With Disabilities Act ("ADA"), see 42 U.S.C. § 12111(5)(B)(I), Count II is necessarily limited to a claim under the Rehabilitation Act, notwithstanding the inclusion of both the Rehabilitation Act and the ADA in the caption to Count II.

working in the business office of the United States Department of Veterans Affairs Medical Center ("VAMC") in April, 2006.  She shared an office suite with Paula Morin who is Caucasian.  Taite and Morin had the same job title: GS-6 Claims Assistant Office Automation.

On her first day of work, Taite told her manager, Stephen Willoughby, that because of her prosthetic leg, she needed a reasonable accommodation for her disability and a modified work station.  Willoughby responded by providing Taite with a raised desk, a special chair, and a way to elevate her feet.

In June, 2006, Taite was involved in a work-related dispute with Morin.  Two days later, Willoughby met with Morin alone in his office for three hours.  Willoughby then had Taite join them in his office.  Morin made a false accusation against Taite, and Willoughby told them both:  "I don't care if you two hate each other.  Get out of my office and go to work!"  (Compl. ¶ 14.)  Subsequently, Taite complained to Patty Healy, the VAMC Equal Employment Opportunity ("EEO") Officer, about her dispute with

Morin,[2] and further complained that Willoughby had shown favoritism toward Morin.

In September, 2006, Taite told Willoughby that Morin had been referring to her as a "girl." Willoughby responded with a smile and said: "Oh, I cannot refer to you as my girl?" (Compl. ¶ 16.) Taite objected, stating that she was not a "girl" but a woman. Willoughby took no action against Morin for calling Taite a girl.

Later, Taite told Willoughby that Morin, as her timekeeper, had inaccurately posted overtime to her (Taite's) paycheck. Willoughby told Taite that he was not going to pay her overtime. He had, however, paid Morin overtime.

On September 26, 2006, while delivering office supplies, Morin threw a calendar at Taite which hit her in the face. In response, Taite telephoned Healey, Assistant Manager Wendy Decoff, Business Manager Joan Wilmot, Kathy Mason, and Gary DaGasta to report the incident. When none of them came to her office quickly enough, Taite telephoned the VA police. Sgt.

---

[2] At a hearing in a civil action Taite brought against Morin, Taite testified that she had mistakenly reported Morin to Healey. See Taite v. Morin, Civ. No. 06-cv-428-JM, 2007 WL 1181640, at *4 (D.N.H. Apr. 18, 2007).

Richardson arrived within a few minutes, followed by Decoff and Wilmot. Wilmot sent Taite home for the rest of the day. While Sgt. Richardson was questioning Taite about the incident, Decoff was across the hall with Morin in another office, from which the sound of laughter was audible.

The day after the calendar incident, Taite went to the Human Resources office to speak with Kathy Mason. Taite told Mason she would feel more comfortable if "parameters" could be put in place to protect her from Morin. Mason telephoned Wilmot, to tell Wilmot that Taite had come to Human Resources. Shortly thereafter, Willoughby arrived at Mason's office. Willoughby shouted at Taite: "Come on. Come with me. I am not playing those games." (Compl. ¶ 23.) Willoughby then escorted Taite to the Emergency Room ("ER") of the VAMC where another employee, Cheryl Stancil, shouted at Taite, saying that she "acts like a child and that she [Stancil] hopes that she [Taite] loses her office." (Compl. ¶ 24.) Taite left the ER crying and, from her automobile, telephoned Assistant United States Attorney ("AUSA") Libby Woodcock, and informed Woodcock of the hostile work environment she was encountering. The U.S. Attorney declined to prosecute Morin for the calendar incident. After speaking with AUSA Woodcock, Taite returned to the ER. She telephoned Mason to complain about the makeshift office she had been given in the ER,

4

and to inform Mason of Willoughby's refusal to provide her with an accommodation for her disability.  Mason told Taite that Human Resources had "no service line authority."  (Compl. ¶ 25.)  That same day, Taite filed an EEO complaint based upon the calendar incident and her removal to an office without accommodations.

On September 29, Taite returned to her former office to retrieve personal items.  There, she asked Willoughby whether he had moved her, rather than Morin, because Morin is white and she (Taite) is black.  Willoughby became angry, nasty, abusive, and threatening, and moved close enough to Taite to cause her to step back.  Taite then asked him whether he was going to hit her.  He replied:  "I don't play those games and I don't want you back in this office."  (Compl. ¶ 27.)  That same day, Taite asked Wilmot to assign her a timekeeper other than Morin, explaining that after the calendar incident, she did not want Morin to have access to her personal information.  Wilmot ignored the request.

On October 2, Taite told Willoughby that her new desk had not been modified to accommodate her disability, and she asked him why he had refused to modify it.  Willoughby responded by reiterating his previous statement that he did not want Taite back in the business office.  About a week later, Willoughby moved Taite from the ER to another location.  Again, he told

Taite that he did not want her to be in the business office. Several days later, Taite asked Wilmot a second time, by e-mail, to change her timekeeper.  Wilmot told Taite that any such decision was Willoughby's to make, and she also forwarded a copy of Taite's e-mail to another VAMC employee who was not one of Taite's managers.

On October 26, Taite was purposefully excluded from a staff meeting in the business office.  At around that same time, she began to experience back and leg pain she attributes to working in an office without accommodations, and that was located further from her parking space than her original office had been.  Taite continued to complain to Wilmot about Willoughby's discriminatory treatment, and Wilmot repeatedly referred Taite back to Willoughby.  In late October, Willoughby stopped picking up Taite's completed work, which she was not able to deliver to him, because he had barred her from the business office.

Shortly thereafter, Taite resigned.  She describes her resignation:

> The discriminatory conduct and hostile work environment created by the VAMC managers, namely, Mr. Willoughby, Joan Wilmot, Kathy Mason, and Sandra Davidson, and their failure to accommodate the Plaintiff's disability and deal with Ms. Morin's assault and the refusal of Mr. Willoughby to pay overtime pay, forced Plaintiff to involuntarily resign

>    her position as a GS-6 Claims Assistant Office
>    Automation with the Veteran[s] Affairs Medical Center
>    in White River Junction, Vermont.

(Compl. ¶ 37.)

## Discussion

Defendant argues that Counts IV, V, and VI should all be dismissed because those claims are preempted by Title VII, due to plaintiff's status as a federal employee at the time of the acts of which she complains. Plaintiff, apparently misunderstanding defendant's argument,[3] objects to dismissal of Count IV, citing Pennsylvania State Police v. Suders, 542 U.S. 129 (2004). In Suders, the Supreme Court recognized "that Title VII encompasses employer liability for a constructive discharge." Id. at 143. But, the Court said nothing about whether a former federal employee making a Title VII claim based on a constructive discharge may also maintain a state common-law claim based on the same conduct. Thus, Suders does not support plaintiff's common-law claims.

---

[3] Defendant does not argue that plaintiff is barred from claiming that she was constructively discharged, for the purpose of establishing an adverse employment action on which to base her Title VII claim. Rather, defendant argues only that plaintiff may not maintain state common-law claims arising out of the same conduct that supports her Title VII claim.

7

Defendant, on the other hand, raises an argument with some merit. Under Title VII, federal employees are protected "from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Title VII, however, "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976) (emphasis added). Thus, to the extent that Counts IV, V, and VI assert claims arising out of the conduct underlying plaintiff's Title VII claim, and are based upon defendant's allegedly discriminatory actions, those claims are preempted by Title VII. See Pfau v. Reed, 125 F.3d 927, 932 (5th Cir. 1997), vacated and remanded on other grounds, 525 U.S. 801 (1998), pertinent holding reinstated, 167 F.3d 228, 229 (5th Cir. 1999) ("[W]hen a complaint against a federal employer relies on the same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is 'not sufficiently distinct to avoid' preemption."); Roland v. Potter, 366 F. Supp. 2d 1233, 1235-36 (S.D. Ga. 2005) (dismissing claim for intentional infliction of emotional distress that was "wholly derivative from the alleged conduct giving rise to . . . Title VII claims") (citing Chergosky v. Hodges, 975 F. Supp. 799, 801 (E.D.N.C. 1997)).

If plaintiff had asserted only a Title VII claim along with common-law claims arising out of the same conduct or based on the same basic theory of liability, then defendant would be entitled to dismissal of Counts IV, V, and VI.  But plaintiff has done more than that.

In Count IV, her constructive discharge claim,[4] plaintiff asserts that her working conditions were made intolerable by racial discrimination, disability discrimination, and Willoughby's failure to pay her overtime that she was due under the Fair Labor Standards Act.  Thus, the common-law claim asserted in Count IV is not co-extensive with the Title VII claim; it is materially broader.  So, too, with plaintiff's claims for negligent and intentional infliction of emotional distress stated in Counts V and VI.  Read fairly, those claims assert that plaintiff was unlawfully subjected to emotional distress resulting from conduct that violated Title VII, the Rehabilitation Act, and the Fair Labor Standards Act.  As with Count IV, both Counts V and VI arise out of alleged conduct

---

[4] Count IV is captioned "constructive discharge," but there is no such cause of action under the common law of New Hampshire. Because a claim for wrongful termination may rest on a constructive discharge, see Lacasse v. Spaulding Youth Ctr., 154 N.H. 246-248-49 (2006) (citing Karch v. BayBank FSB, 147 N.H. 525, 536 (2002)), Count IV is construed as a claim for wrongful termination under the theory described in Cloutier v. Great Atlantic & Pacific Tea Co., 121 N.H. 915 (1981).

prohibited by federal statutes other than Title VII.  Thus, the preemptive effect of Title VII does not reach the entirety of plaintiff's common-law claims.  Rather, it merely precludes plaintiff from proving her common-law claims with evidence of conduct, such as racial discrimination, that is prohibited by Title VII.

     For the reasons given, and to the extent described above, defendant's motion to dismiss Counts IV, V, and VI (document no. 5) is granted in part and denied in part.  Whether the claims raised in Counts IV, V, and VI are otherwise valid is a question for another day; the only question before the court now is the one posed by defendant's motion to dismiss, i.e., whether Counts IV, V, and VI are preempted by Title VII.


     **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        Chief Judge

January 12, 2009

cc:  Brenda K. Taite, pro se
     Seth R. Aframe, Esq.