UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Brenda K. Taite,
        Plaintiff

        v.                              Civil No. 08-cv-258-SM
                                        Opinion No. 2010 DNH 036

Erik K. Shineski, Secretary,
Department of Veterans Affairs,
        Defendant

**O R D E R**

Pro se plaintiff Brenda Taite asserts claims against the
Secretary of Veterans Affairs under the Fair Labor Standards Act
(Count I), the Rehabilitation Act (Counts II and VII), Title VII
of the Civil Rights Act of 1964 (Counts III and VII[1]), and New
Hampshire common law (Counts IV, V, and VI).  Before the court is
defendant's motion for summary judgment.  Plaintiff objects.
Defendant's motion is granted in part and denied in part.

**Summary Judgment Standard**

A summary judgment motion should be granted when the record
reveals "no genuine issue as to any material fact and . . . the
moving party is entitled to a judgment as a matter of law."  FED.

---

[1] Count VII of Taite's amended complaint is titled
"Retaliation."  (Am. Compl., at 17.)  It does not, however,
identify the claim's legal basis.  Taite's objection to summary
judgment, however, appears to suggest that the retaliation claim
has been brought under both the Rehabilitation Act and Title VII.

R. Civ. P. 56(c).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion,' " Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)), and "cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation,' " Meuser, 564 F.3d at 515 (quoting Welch v. Ciampa, 542 F.3d 927, 935 (1st Cir. 2008)). When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor." Meuser, 564 F.3d at 515 (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

2

**Background**

Brenda Taite is of African-American descent.  In 1992, she was diagnosed with chondrasarcoma, a form of cancer.  She has received extensive treatment, including the surgical insertion of an internal prosthesis in her right leg.  As a result, she suffers limitations in her ability to walk, sit, stand, and perform other daily activities.  In 2002, Dr. Alan Aaron, who operated on Taite's leg in 1993, wrote the following:

> Ms. Brenda Taite underwent extensive reconstructive surgery of her right leg after a tumor resection.  This has resulted in a weak right leg.  She is able to walk, but not for extended distances and her sitting tolerance is somewhat diminished. . . . Sitting tolerance is somewhat reduced and she may require several periods where she may need to stand just to relieve some of her discomfort.  She cannot lift anything greater than 10 pounds.  She cannot do any extended walking.  Other than these listed, I think that she can pursue any other activities.

(Obj. to Summ. J. (document no. 34), Ex. 2.)

In April, 2006, Taite began working at the United States Department of Veterans Affairs Medical Center ("VAMC") in White River Junction, Vermont.  She was hired as one of four claims assistants in the Fee Basis section, under the supervision of Patient Services Manager Stephen Willoughby.  Taite shared a suite in the Fee Basis Office with Paula Morin, who is Caucasian, and who has no apparent disability.  Taite and Morin had the same

3

job title, but they had different job responsibilities; Morin's
job involved substantially more direct contact with clients.[2]
(Mot. Summ. J. (document no. 32), Ex. A (Taite Dep.), Vol. I, at
95, 236, Vol. II, at 122; Ex. B (Willoughby Decl.) ¶¶ 2, 5).

On her first day of work, Taite told Willoughby that she had
had cancer in her right knee and needed an accommodation.  She
requested, and was given, a raised desk top, a chair with a high
back, and a trash can and pillow on which to elevate her feet
(hereinafter "special furniture").[3]  She needed to elevate her
feet "to alleviate the swelling in [her] right leg."  (Taite
Decl. ¶ 5.)  Regarding Willoughby's response to her request for
an accommodation, Taite says that "[h]e was very kind about it."
(Taite Dep., Vol. I, at 63.)  Taite had the use of her special
furniture for her entire tenure at the VAMC, except for the nine
work days between September 27 and October 11, 2006.

_____

[2] Taite testified that three or four clients came to see her
during her seven-month tenure at the VAMC (Taite Dep., Vol. I, at
95, 236), while Morin saw several clients a week (id. at 102).

[3] There is some disagreement over whether Taite's special
furniture was a Rehabilitation Act accommodation (Taite's
position) or was, instead, merely provided for Taite's comfort
(Willoughby's view).  For purposes of ruling on the motion before
it, the court assumes, without deciding, that Taite's special
furniture was a Rehabilitation Act accommodation.

In September, 2006, Taite told Willoughby that Morin had
been referring to her as "girl."  (Taite Dep., Vol. I, at 140.)
Willoughby responded by saying: "Oh, I cannot refer to you as my
girl?"  (Id.)  Taite objected, stating that she was a woman.
(Id.)  Taite avers in her complaint that Willoughby took no
action against Morin for calling her a girl (Am. Compl. ¶ 16).
But, after Taite spoke to Willoughby, Morin never again referred
to her as "girl."[4]  (Taite Dep., Vol. II, at 5, 115.)

During the course of her employment, Taite used 7.5 hours of
compensatory time.  (Mot. Summ. J., Ex. B, Attach. B-1.)  She had
earned compensatory time for working beyond the end of her
regular day on several occasions, and first did so no later than
July 18.  (Id.)  It is undisputed that before Taite worked any
extra hours, Willoughby told her that she would receive
compensatory time rather than overtime pay.  (Taite Dep., Vol. I,
at 174.)  It is also undisputed that Taite was not compelled to
work extra hours; she was free to work extra hours in exchange
for compensatory time, or not to work any extra hours at all.
(Id.)  During the time that Taite was employed by the VAMC, Morin
worked approximately 160 extra hours and earned approximately
$4130 in overtime pay.  (Obj. to Summ. J., Ex. 21, at 1-3.)  Most

---

[4] And, Taite has produced no evidence that Willoughby ever
referred to her as "girl" again after she told him she objected
to that mode of address.

of the overtime worked by both Taite and Morin involved tasks
that fell into Morin's area of responsibility.  (Willoughby Decl.
¶ 4; <u>see also</u> Taite Decl. ¶ 8; Obj. to Summ. J., Ex. 20, at 4.)
On September 15, Taite asked Willoughby why he refused to pay her
overtime, but approved overtime pay for Morin.  (Taite Decl. ¶
8.)  Willoughby told her that he did not have the money to pay
her overtime.  (<u>Id.</u>)

On September 26, 2006, while delivering office supplies,
Morin threw a calendar at Taite, hitting her in the face.  The
calendar incident was at least the second confrontation between
Taite and Morin.  (<u>See</u> Compl. ¶¶ 13-14; Taite Dep., Vol. I, at
183-87; Willoughby Decl. ¶ 5.)  Immediately after Morin threw the
calendar at Taite, Taite telephoned a number of people to
complain about Morin's actions, including the VA police.  The
investigating officer completed an offense report and forwarded
it to the United States Attorney, who declined to prosecute.
(Obj. to Summ. J., Ex. 27.)  At about 4:00 p.m. on the day of the
calendar incident, Willoughby's supervisor, Joan Wilmot, sent
both Taite and Morin home, with pay.  (Mot. Summ. J., Ex. D
(Wilmot Decl.) ¶ 3.)

The day after the calendar incident, Taite talked with Kathy
Mason of the VAMC human resources department and said "either

6

[you] set parameters or I'm not going back into that office."
(Taite Dep., Vol. I, at 238.)  Later that day, Willoughby and
Wilmot decided that Taite and Morin had to be separated.
(Willoughby Decl. ¶ 5.)  They further decided that "[b]ecause Ms.
Morin had frequent face-to-face contact with veterans, it would
have caused undue difficulty for veterans to wander the hospital
looking for her . . . [and] that it made more sense to move Ms.
Taite." (Id.)  Willoughby explained that rationale to Taite on
September 29. (Taite Dep., Vol. I, Ex. 6.)  Taite's response to
Willoughby included the following statement: "The only reason you
move[d] me is because I am Black and Paula is white."[5]  (Id.)


Willoughby's initial plan was to place Taite in the Business
Office with Wilmot, but Taite said that she was unable to climb
the stairs in the Business Office. (Willoughby Decl. ¶ 5.)
Accordingly, Willoughby did not move her there.  The only other
available space was in the Admissions Office. (Id.)  So,
Willoughby moved Taite to the Admissions Office, where another of
Willoughby's subordinates, Wendy DeCoff, also worked. (Id. ¶¶ 5-
7.)  Immediately after placing Taite in the Admissions Office,
Willoughby began trying to find a better location for her, and,

---

[5] Approximately half an hour earlier, after Willoughby told
Taite that the move had been placed on hold by the union, Taite
responded: "Oh everything is to accommodate Paula Morin.  You
moved me because I am Black and your little white princess who
throws a calendar at me and it strikes me in the face gets to
keep her office." (Taite Dep., Vol. I, Ex. 6.)

as he believed that she would not be working in the Admissions
Office for very long, he did not have her special furniture moved
there.  (Id. ¶ 6.)  Willoughby discussed Taite's situation in an
October 2 e-mail to Wilmot:

> Also, per our conversation with Mr. Ocker [a union
> representative] on 9/29/06, it was agreed, at least for
> the short term, we swap Mr. Renehan [who also worked in
> the Fee Basis Office] and Ms. Taite.  I advised Mrs.
> Wessel of this first thing this morning and she was not
> pleased.  It is my understanding that she attempted to
> contact Mr. Ocker who apparently is not here today.
> She had spoken with Mrs. Mattoon [another union
> representative].  Mrs. Wessel does not want to share an
> office with Ms. Taite because Mrs. Wessel says "She's
> trouble.".  As you know Ms. Taite is alleging that I
> move[d] her instead of Paula because she was black and
> Paula is white.  Something to think about if we move
> Mrs. Wessel [who is an African American] and Ms. Taite
> together could we be accused of "segregation"?
>
> Ms. Taite's desk has been specially adjusted to meet
> her physical needs. . . .  her temporary desk has not.
> I have concerns that if we do not do something soon,
> this will become an issue.  As disruptive as all this
> would be should I start action to make the move?

(Obj. to Summ. J., Ex. 3.)


It is undisputed that Taite was without her special
furniture for the nine work days she spent in the Admissions
Office.  After Willoughby moved her there, she told him
repeatedly that she wanted her high-backed desk chair and that
the desk she was using was too low.  (Taite Dep., Vol. II, at

42.)  She also asked Kathy Mason to help her get her special
furniture brought down to the Admissions Office.  (Id.)


    While Taite was without her special furniture during the
nine days she worked in the Admissions Office, Willoughby says
that Taite "stood and moved as necessary for her comfort and I
permitted her to do so."  (Willoughby Decl. ¶ 6.)  In her
objection to summary judgment, Taite writes: "[t]he plaintiff
does not admit as the Secretary has stated in his motion for
summary judgment that Willoughby did permit the plaintiff to 'get
up and walk around as needed' when he relocated her to the
[Admissions Office]."  (Obj. to Summ. J., at 6; see also id. at
13 ("Willoughby did not allow the plaintiff to get up
frequently"); id. at 15 ("The Secretary has stated that the
plaintiff was permitted to get up and walk around in the
admissions office and this is not true.  The plaintiff denies
that Willoughby permitted her to get up and walk around in the
[Admissions Office] . . .").  Taite does not, however, identify
any record support for her position.[6]  Her declaration is silent
on that matter and, in her deposition, she testified that while

---

[6] Because her objection was not subscribed under penalty of
perjury, in accordance with 28 U.S.C. § 1746, the court
disregards any factual allegations stated therein that are not
otherwise supported by competent evidence.  See Meuser, 564 F.3d
at 515; Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997)
("the court may ignore unsupported conclusions, rank speculation,
and opprobrious epithets").

she was stationed in the Admissions Office, she "would get up and walk around" (Taite Dep., Vol. II, at 44), and that by getting up and walking around, she was able to alleviate the swelling in her right leg (see id. at 44-45, 58).  Taite's deposition testimony is sufficient to warrant disregard of the unsupported allegation in her objection to summary judgment.  See Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (explaining that court may disregard "those 'facts' which have since been conclusively contradicted by [plaintiff's] concessions or otherwise . . .").  Accordingly, it is undisputed that while Tate worked in the Admissions Office, she relieved the swelling in her leg by getting up and walking around, and that Willoughby permitted her to do so.

On September 27, after Willoughby relocated her to the Admissions Office, Taite began the process of making an employment discrimination complaint based on the calendar incident by contacting George Irvin, an Equal Employment Opportunity ("EEO") Counselor at the VA.  Her written complaint is dated October 31, 2006, and was officially filed on November 13.  (Obj. to Mot. to Amend (document no. 10), Ex. C, Attach. A.) In her EEO complaint, under the heading "Basis," Taite listed "Race African-American.")  (Id.)  She described her claim as follows:

> On September 26, 2006 at approximately 2:45 p.m., my
> Caucasian co-worker, Paula Morin threw a calendar at
> me, which struck me in the face.  After Paula threw the
> calendar at me, which struck me in the face, I jumped
> up from my chair and said, "Paula why did you throw
> that calender at me.  The calendar struck the rim of my
> eyeglasses.  Why did you do it?"  Paula just laughed.

(Id.)  The director of the VAMC was notified of Taite's initial

EEO counseling on October 13, 2006, and Alternative Dispute

Resolution ("ADR") was discussed with Willoughby on October 16.

(Reply (document no. 12), Attach. 11.)  In a November 28, 2006,

letter accepting Taite's EEO complaint, the VA's Regional EEO

Officer described Taite's claim:

> (A) Whether on the basis of race (African-American) the
> complainant was subjected to harassment and a hostile
> work environment when:
>
>> 1.   On September 26, 2006 the complainant's co-
>>      worker, PM, threw a calendar at the
>>      complainant which hit her in the face.

(Obj. to Mot. to Amend, Ex. C, Attach. B.)  Subsequently, Taite

added various other claims to her EEO complaint, including claims

of disability discrimination, but she made those amendments long

after she stopped working at the VAMC.[7]

---

[7] In response to a letter from Taite dated December 6, 2006,
and received by the VA's Office of Resolution Management on
December 18 (see Obj. to Mot. to Amend, Ex. C., Attach. C), the
Regional EEO Officer accepted several additional claims,
including one for failure to accommodate (id., Ex. C, Attach. D).

Also on September 27, Taite asked Willoughby and Wilmot to
have someone other than Morin serve as her timekeeper.  She
wrote: "Currently, Paula Morin is my timekeeper.  Given the
abusive treatment that I have received from her, I am
respectfully asking that I am assigned to another time keeper."
(Obj. to Summ. J., Ex. 31.)  Willoughby denied that request no
later than October 13.  (Obj. to Summ. J., Ex. 11.)  Taite
continued to pursue the matter with Willoughby, Wilmot, and
Sandra Davidson,[8] to no avail.  (Id.)  Willoughby explained his
decision:

> Immediately after the alleged calendar incident,
> Ms. Taite began requesting a new timekeeper.  To that
> point, Ms. Morin had been her timekeeper, as well as
> the timekeeper for all of the Fee Basis Office staff.
> Ms. Taite alleged that Ms. Morin had made errors on her

_____

[8] For example, on October 16, Taite sent an e-mail to
Wilmot, with copies to Willoughby and Davidson, stating:

> I have been keeping a chronology of the discrepancies
> with my time and I will be forwarding my chronology of
> the said discrepancies to the necessary personnel
> regarding this issue.  Moreover, I do not think that it
> is appropriate for Paula Morin to throw a calendar at
> me and it strikes me in my face and she is my
> timekeeper.

(Obj. to Summ. J., Ex. 11.)  Willoughby responded:

> Brenda – I will be more than happy to entertain any
> documentation you might have in regards to time
> discrepancies.  In regards to your allegation that Mrs.
> Morin threw a calendar at you striking you in the
> [face], I believe [that] is being investigated by the
> VA police.

(Id.)

12

> timecard.  I reviewed those errors and they were not of
> the type of error that required a reassignment of the
> timekeeper responsibilities.  Additionally, Ms. Taite
> stated that she did not feel it was appropriate for Ms.
> Morin to have access to her personal information given
> that Ms. Morin had allegedly assaulted her.  The issue
> of the alleged assault aside, acting as the timekeeper
> for Ms. Taite did not give Ms. Morin access to any
> personal information about Ms. Taite.  I determined
> that it would not be an effective use of time or
> resources to have Ms. Taite assigned a different
> timekeeper based on her unfounded concerns regarding
> Ms. Morin's inability to perform as her timekeeper.

(Willoughby Decl. ¶ 10.)


On October 11, Willoughby moved Taite from the Admissions

Office to Virginia Fuller's office, which was closer to her

original work station in the Fee Basis Office, but still separate

from it.  He also had all of Taite's special furniture moved into

her new office.


Employees under Willoughby's supervision had offices at

several different locations on the VAMC campus.  (Willoughby

Decl. ¶ 7.)  It was his practice to visit those locations daily

to retrieve completed work and mail.  (Id.)  He was out of the

office on October 23, and did not collect Taite's work on that

day.  (Taite Dep., Vol. II, at 131; Taite Dep., Ex. 10.)  Before

noon the next day, her work had been picked up.  (Id.)

By letter dated October 23, 2006, Taite was offered the position of Acting Associate Director of EO/AA Programs in the Office of Institutional Diversity & Equity at Dartmouth College. (See Obj. to Summ. J., Ex. 1.)  Taite's letter of resignation from the VAMC, addressed to Willoughby, was also dated October 23, 2006.  (See Mot. Summ. J., Ex. C, Attach. C-4.)  Her letter specified an effective date of November 3.  (Id.)  On the morning of October 26, Taite notified Kathy Mason of the human resources department that she was resigning from her position at the VAMC. (Taite Dep., Vol. II, at 126.)  She gave her resignation letter to Willoughby at about 4:00 that afternoon.  (Id.)

Between the time when Taite notified Mason of her resignation and the time she gave her resignation letter to Willoughby, Willoughby held a patient services staff meeting. Taite was not notified of the meeting and did not attend.  (Id. at 125-26; but see Willoughby Decl. ¶ 11 ("Prior to a staff meeting, it was my practice to send an e-mail to all employees informing them of the meeting.  I have no reason to believe that Ms. Taite would not have been informed of the meeting along with the rest of the staff.").)  The minutes of the meeting list eight attendees, and list another nine staff members under the heading "Coverage/Excused."  (Willoughby Decl., Attach. 3.)  "[N]othing discussed at the meeting would have affected Ms. Taite's ability

14

to do her job during her remaining time with the VAMC."
(Willoughby Decl. ¶ 11.)

## Discussion

Count I

In Count I, Taite claims that the Secretary violated the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., by
failing to pay her at least one and one-half times her regular
hourly rate for the 7.5 hours she worked in excess of her normal
work week over the course of her employment at the VAMC.  The
Secretary argues that Count I fails, as a matter of law, because
Taite agreed to accept compensatory time instead of overtime pay,
as permitted by the Federal Employees Pay Comparability Act
("FEPCA").  Taite disagrees.[9]

"The FLSA requires employers, to provide compensation to
employees who engage in work 'for a workweek longer than forty
hours . . . at a rate not less than one and one-half times the
regular rate at which [the employee] is employed.' "  Abbey v.
United States, 82 Fed. Cl. 722, 729 (Fed. Cl. 2008) (quoting 29
U.S.C. § 207(a)(1)).  But, the FEPCA provides, in pertinent part,
that "[t]he head of an agency may . . . on request of an

---

[9] Taite says she has created a genuine issue of material
fact, but it is difficult to discern precisely what factual
dispute she is referring to.

employee, grant the employee compensatory time off . . . instead
of payment under section 5542 or section 7 of the Fair Labor
Standards of Act of 1938 for an equal amount of time spent in
irregular or occasional overtime work." 5 U.S.C. § 5543(a)
(emphasis added).  "Irregular or occasional overtime work is
defined by the [relevant] regulations as 'work that is not
scheduled in advance of the employee's workweek.' " Doe v.
United States, 74 Fed. Cl. 592, 599 (Fed. Cl. 2007) (quoting 5
C.F.R. § 551.501(c)).


      Because respondent has not established that the overtime at
issue met the regulatory definition of "irregular or occasional
overtime work," he is not entitled to summary judgment on Count
I.  See Doe, 74 Fed. Cl. at 599.  Another potential obstacle to
respondent's reliance upon 5 U.S.C. § 5543(a) is the statutory
requirement that its provisions are triggered "on request of an
employee."  But that is a question for another day.


Count II

      In Count II, Taite claims that the Secretary violated the
Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., by failing
to provide her with a reasonable accommodation for her disability
and by taking adverse employment actions against her on account
of her disability.  The court considers each claim in turn.

16

A. Failure to Accommodate

Taite claims that she was made to work without an accommodation for her disability from September 27, 2006, until October 11, 2006, i.e., the nine days she spent working in the Admissions Office.  The Secretary moves for summary judgment on two grounds.  He first argues that Taite has failed to demonstrate that she suffered from a disability.  He further argues that because Taite was allowed to get up from her desk and walk around when she worked in the Admissions Office, she was, in fact, provided with a reasonable accommodation during the nine days at issue.  Taite counters that because her special furniture was never moved to the Admissions Office, she was provided no accommodation at all when she worked there, and that the Secretary cannot show that moving her special furniture to the Admissions Office would have imposed an undue hardship.

The Rehabilitation Act "impose[s] an affirmative duty on employers to offer a reasonable accommodation to a disabled employee."  Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008) (citations omitted).[10]

---

[10] "[S]ince the same standards apply to both the Rehabilitation Act and [the Americans with Disabilities Act], [it is appropriate to] rely on precedent construing both statutes" when adjudicating a claim arising under either one.  Enica, 544 F.3d at 338 n.11 (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 12 n.1 (1st Cir. 2004)).

17

> In order to assert a claim for failure to
> accommodate under the Rehabilitation Act, [a plaintiff]
> must establish that she (1) suffers from a "disability"
> within the meaning of the statute, (2) is a qualified
> individual inasmuch as she is able to perform the
> essential functions of her job, with or without
> reasonable accommodation, and (3) that, despite its
> knowledge of her disability, the [defendant] did not
> offer a reasonable accommodation.

Id. at 338.

The Secretary engages on both the first and third elements of Taite's failure-to-accommodate claim. The court will assume, without deciding, that Taite did suffer from a disability within the meaning of the Rehabilitation Act. Her claim fails, however, on the third element.

Taite argues that Willoughby failed to provide her with any accommodation for the nine days she was required to work in the Admissions Office. All agree that Taite was without her special furniture for those nine days, but it is also undisputed that she was allowed to get up from her desk and walk around as needed. Taite says repeatedly, in her memorandum of law, that she was not allowed to get up and walk around when she was working in the Admissions Office, but she has provided no competent evidence to support that allegation. To the contrary, she testified under oath, at her deposition, that she did get up and walk around and that by doing so, she was able to relieve the swelling in her

18

right leg.  The undisputed factual record, thus, demonstrates
that Taite was provided with an appropriate and effective
accommodation.

Moreover, Taite has failed to identify a triable issue of
fact related to the reasonableness of the accommodation she was
provided.  She alleges, in her complaint, that when she first
started working at the VAMC, she "requested permission to get up
frequently from her desk to alleviate the stiffness of the
artificial limb." (Am. Comp. ¶ 9.)  That request, in turn, was
in line with Dr. Aaron's recommendation that Taite be allowed to
stand periodically to reduce discomfort associated with her
"somewhat limited" sitting tolerance.  Moreover, in her
memorandum of law, Taite argues that an "accommodation was
necessary for [her] to perform her job because she could not sit
for extended periods of time because the prolonged sitting would
cause her severe and excruciating pain in her back and leg and
severe swelling in the right leg. (Obj. to Summ. J., at 19.)  It
is undisputed that while Taite worked in the Admissions Office,
she was allowed to avoid sitting for extended periods of time.
Because the accommodation Taite was provided was one she asked
for, and was consistent with her doctor's recommendation, there
is no basis to think that it was not a reasonable accommodation.

19

Notwithstanding Taite's current claim that not moving her special furniture to the Admissions Office constituted a failure to provide a reasonable accommodation, both the record and Taite's own argument demonstrate conclusively that she was reasonably accommodated for the nine days at issue. Her reduced capacity for sitting was accommodated by allowing her to sit less. She may have preferred an alternative accommodation that made sitting more comfortable, but, as the Secretary correctly points out, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996) (quoting Schmidt v. Methodist Hosp., 89 F.3d 342, 344-45 (7th Cir. 1996)); see also 29 C.F.R. § 1630, App. § 1630.9 (explaining that when there is more than one reasonable accommodation, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide"). Because the undisputed factual record demonstrates that Taite was not denied a reasonable accommodation for the nine days she worked in the Admissions Office, the Secretary is entitled to judgment as a matter of law on the failure-to-accommodate claim in Count II.

20

B. Disability Discrimination

Taite also claims, in Count II, that she was discriminated against because of her disability.  Specifically, she alleges that Willoughby took away her accommodation and "segregated [her] from the other employees in the [Fee Basis Office] because of her . . . disability, which is cancer of the cartilage (chondrasarcoma)."  (Am. Compl. ¶ 48.)  Taite's segregation claim appears to be based on both her September 27 move from the Fee Basis Office to the Admissions Office and her October 11 move from the Admissions Office to Virginia Fuller's office.  The Secretary requests summary judgment on two grounds.  First, he argues that most of the acts that form the basis of Taite's claim were not adverse employment actions.  He further argues that Taite has produced no evidence of pretext.

Disability discrimination claims under the Rehabilitation Act are analyzed under the McDonnell Douglas burden-shifting framework.  See Ríos-Jiménez v. Principi, 520 F.3d 31, 40 (1st Cir. 2008) (citing Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

> Under that framework, [Taite] must first make a prima
> facie case of disability discrimination, see McDonnell-
> Douglas, 411 U.S. at 802, by establishing "(1) that
> [she] suffers from a disability or handicap"; (2) that
> "[she] was nevertheless able to perform the essential

functions of [her] job, either with or without
reasonable accommodation," and (3) that her employer
"took an adverse employment action against [her]
because of, in whole or in part, [her] protected
disability." Carroll [v. Xerox Corp.], 294 F.3d [231,]
237 [(1st Cir. 2002)].

Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 154

(1st Cir. 2009) (parallel citation omitted).  "If [Taite]

establishes her prima facie case, 'the burden then shifts to

[defendant] to articulate a legitimate, non-discriminatory reason

for [his] employment decision and to produce credible evidence to

show that the reason advanced was the real reason.' " Sensing,

575 F.3d at 154 (quoting Tobin, 433 F.3d at 105).  "Finally, if

defendant[ ] offer[s] such a legitimate reason, the burden shifts

back to the plaintiff to produce evidence 'to establish that

[defendant's] non-discriminatory justification is mere pretext,

cloaking discriminatory animus.' " Sensing, 575 F.3d at 154

(quoting Tobin, 433 F.3d at 105).  "The ultimate burden of

proving unlawful action rests at all times with [the plaintiff]."

Ríos-Jiménez, 520 F.3d at 41 (citing Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 143 (2000)).


     In her complaint, Taite identifies two adverse employment

actions supporting her disability discrimination claim – being

relocated to the Admissions Office without her special furniture,

and being segregated from the other employees in the Fee Basis

section while working in both the Admissions Office and Virginia
Fuller's office.  At Taite's deposition, in what can only be
described as an extraordinary effort to deal fairly with a pro se
litigant, the United States Attorney carefully walked Taite
through her complaint, giving her an opportunity to clarify her
legal theories by identifying every purported adverse employment
action on which she based her discrimination and retaliation
claims.  Given Taite's deposition answers, the Secretary's
summary judgment motion analyzes eleven separate incidents,
within the McDonnell Douglas framework, as adverse employment
actions underlying Taite's disability-discrimination claim.[11]

--------

[11] Specifically, the Secretary identifies, and analyzes, the
following acts:

    (1) Willoughby's comment about not referring to
Taite "as my girl";

    (2) the VA's failure to pay Taite overtime, even
though it paid Paula Morin overtime;

    (3) Morin throwing the calendar at Taite;

    (4) Willoughby moving Taite to the admissions
office after the calendar incident;

    (5) Willoughby moving Taite from the admissions
office to another office, but not allowing her to
return to her original office;

    (6) Wilmot sending Taite home for the rest of the
day after Morin threw the calendar;

    (7) Cheryl Stancil making an upsetting comment to
Taite when Willoughby brought her to the admissions
office;

    (8) Willoughby and Wilmot refusing Taite's request

23

But, Taite's objection does not respond in kind.  She undertakes
no <u>McDonnell Douglas</u> analysis, and discusses only two of the
eleven employment actions identified by the Secretary – being
made to work in the Admissions Office without her special
furniture and being segregated from the other employees in the
Fee Basis section.  Thus, the court limits its analysis to those
two employment actions.

The Secretary is entitled to summary judgment because Taite
has failed to establish a prima facie case.  In support of her
claim that she "suffered an adverse employment action because of
her disability" (Obj. to Summ. J., at 28), she argues:

> When Willoughby moved the plaintiff to the [Admissions
> Office], he refused to accommodate her workstation in
> the [Admissions Office] even though on several
> occasions, she asked him for an accommodation which she
> had in place in the office that she shared with Morin.
> Therefore, the Plaintiff suffered an adverse employment
> action because of her disability at the hands of
> Willoughby because he removed her from her accommodated

---

to have Morin removed as her timekeeper;

   (9) Willoughby not retrieving Taite's work on one
occasion when she was stationed in the admissions
office;

   (10) Willoughby excluding Taite from the Patient
Services staff meeting on October 26, 2006; and

   (11) the alleged constructive discharge that arose
from the "intolerable working conditions" resulting
from all of the allegations listed above.

(Def.'s Mem. of Law, at 17-18.)

workstation and assigned handicapped parking space on
September 27, 2006, and refused to provide her with an
accommodation and told her that he did not want her
back in the office she shared with Morin after she
complained to management and the VA police that Morin
had assaulted her.

(Id.)  She further argues that "[t]here are genuine issues of
material fact[ ] as to whether this accommodation [i.e., moving
her special furniture to the Admissions Office] would have
imposed an 'undue hardship' on the VAMC."  (Id. at 29.)  In other
words, Taite does not claim that she was moved to the Admissions
Office without her special furniture, or was kept out of the Fee
Basis Office, because of her disability.  Instead, she claims
that moving her to the Admissions Office without her special
furniture was an adverse employment action because she had a
disability that made it difficult for her to work without an
accommodation.  The former might state an actionable disability-
discrimination claim, but the latter is merely a restatement of
Taite's claim for failure to accommodate.  Thus, Taite has failed
to establish a prima facie case of disability discrimination; she
simply does not allege facts that support a claim that she was
subjected to an adverse employment action that was motivated by
the fact that she had a disability, was regarded as having a
disability, or had a record of having a disability.

Even if Taite had established a prima facie case, the
Secretary has proffered legitimate non-discriminatory reasons for
moving her to the Admissions Office and keeping her out of the
Fee Basis Office, and Taite has failed to produce any evidence
sufficient to carry her burden at step three of the McDonnell
Douglas analysis.

To meet his burden to articulate a legitimate non-
discriminatory reason for moving Taite out of the Fee Basis
Office, the Secretary says that Willoughby moved Taite because it
was necessary to separate Taite and Morin and, of the two, Taite
had less face-to-face contact with veterans, making a shift in
her work station less disruptive to the agency's clients than a
shift in Morin's work station.  Taite testified than she could
not work in the same office as Morin, and she acknowledged that
Morin had more face-to-face contact with clients than she did, so
the Secretary has met his burden of producing "credible evidence
to show that the reason advanced [for moving Taite out of the Fee
Basis Office] was the real reason."[12] Ríos-Jiménez, 520 F.3d at
41.

---

[12] In addition, Taite produced evidence that Tiffany Wessel
did not want to share an office with her, which suggests a non-
discriminatory reason for not bringing Taite back into the Fee
Basis Office.

Taite, however, has failed to "establish that the proffered reason [for moving her] is pretext intended to conceal discriminatory intent." Ríos-Jiménez, 520 F.3d at 41.  She engages in no analysis under McDonnell Douglas, and says nothing about pretext.  Necessarily, she has not produced any evidence that the reasons given for moving her were both a sham, and a sham intended to cover up a discriminatory motivation.  See Tobin, 433 F.3d at 105; Mesnick, 950 F.2d at 824 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)).  Moreover, there is not the slightest hint of disability-based animus to be found anywhere in the summary judgment record.[13]  Accordingly, the Secretary is entitled to judgment as a matter of law on the disability-discrimination claim in Count II.

Count III

In Count III of her complaint, Taite claims that she was discriminated against on account of her race, in violation of 42 U.S.C. § 2000e-2, when Willoughby moved her to the Admissions Office without her special furniture, moved her from the Admissions Office to Virginia Fuller's office (thus segregating

---

[13] To the contrary, Taite testified that when she initially sought an accommodation from Willoughby, he was "very kind about it."  That, along with Willoughby's e-mail to Wilmot, in which he expressed concern about Taite being without her special furniture for too long, appears to be the only evidence in the record pertaining to Willoughby's attitude toward Taite's disability.

her from the other employees in the Fee Basis section), refused
to give her a new timekeeper, and failed to invite her to
department meetings.[14]  Those acts constitute racial
discrimination, Taite claims, because after the calendar
incident, Willoughby took no corrective action against Morin but,
instead, took the foregoing actions against her.

As with the disability-discrimination claim in Count II, the
Secretary argues that most of the acts on which Taite bases her
racial-discrimination claim were not adverse employment actions
in the first place, and that Taite has produced no evidence of
pretext.  The Secretary further argues that Taite's racial-
discrimination claim fails because, for purposes of a disparate-
treatment claim, Taite and Morin were not similarly situated.

Section IX of Taite's objection is titled "Count III—Racial
Discrimination of Title VII of the Civil Rights Act of 1964 42
U.S.C. § 2000e-2 & Count VII: Retaliation Section 704(a); hostile
work environment; and harassment."  (Pl.'s Obj. to Summ. J., at
29.)  In the body of that section, however, Taite refers only to
disparate treatment.  Because neither Taite's complaint nor her
objection to summary judgment address hostile-work-environment or

---

[14] Taite's complaint refers to "meetings," plural, but there
is no evidence in the record concerning any meeting other than
the one on October 26.

harassment theories in any meaningful way in the context of her discrimination claim,[15] the court construes Count III as asserting only a disparate-treatment claim.

Taite's complaint identifies four possible factual predicates for her disparate-treatment claim – her removal to the Admissions Office, her subsequent move to Virginia Fuller's office (which segregated her from other employees in the Fee Basis section), Willoughby's failure to assign her a new timekeeper, and her exclusion from the October 26 staff meeting. Taite's objection to summary judgment discusses the first three factual predicates, but does not mention the October 26 meeting. Accordingly, the court deems any claim based on the October 26 meeting to be forfeit.  Taite's objection also mentions the "girl" incident and Willoughby's refusal to pay her overtime.  Of the five remaining factual predicates for the disparate-treatment claim in Count III, neither the failure to give Taite a new timekeeper nor the "girl" incident, as alleged, can support a disparate-treatment claim; Taite does not allege that she was treated any differently than any other employee with respect to those incidents.  Thus, Count III consists of a disparate-treatment claim based upon three employment actions: (1) Taite's removal to the Admissions Office; (2) the continued segregation

---

[15] Taite does, however, rely on a hostile-work-environment theory in her retaliation claim.

29

from employees in the Fee Basis section occasioned by her move
from the Admissions Office to Virginia Fuller's office; and (3)
Willoughby's decision to give her compensatory time rather than
overtime pay.

"Disparate treatment is the most easily understood type of
discrimination.  The employer simply treats some people less
favorably than others because of their race, color, religion,
sex, or other protected characteristic." <u>Raytheon Co. v.
Hernandez</u>, 540 U.S. 44, 52 (2003) (quoting <u>Int'l Bhd. of
Teamsters v. United States</u>, 431 U.S. 324, 335 n.15 (1977))
(internal quotation marks, brackets, and ellipsis omitted).
"Liability in a disparate-treatment case 'depends on whether the
protected trait . . . actually motivated the employer's
decision.' " <u>Raytheon</u>, 540 U.S. at 52 (quoting <u>Hazen Paper Co.
v. Biggins</u>, 507 U.S. 604, 610 (1993)).

"Generally, a plaintiff [asserting a disparate-treatment
claim] establishes a prima facie case by showing that (1) [she]
is a member of a protected class; (2) [she] was qualified for the
job; (3) the employer took an adverse employment action against
[her]; and (4) the position remained open or was filled by a
person with similar qualifications." <u>Kosereis v. Rhode Island</u>,
331 F.3d 207, 212-13 (1st Cir. 2003) (citing <u>St. Mary's Honor</u>

<u>Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993); <u>Santiago-Ramos v.</u>

<u>Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 54 (1st Cir.

2000)).[16]

### A. Taite's Removal to the Admissions Office

The court will assume that Taite has made out a prima facie

case of disparate treatment by producing evidence that after the

calendar incident, she was moved to the Admissions Office while

Morin was allowed to remain in the Fee Basis Office suite that

she and Taite had once shared.[17]  As discussed above, the

Secretary has offered a legitimate non-discriminatory reason for

moving Taite, rather than Morin.  The Secretary has also offered

a legitimate non-discriminatory reason for not moving Taite's

special furniture to the Admissions Office, his belief that she

would not be working there long, coupled with her ability to get

---

[16] While the elements identified in <u>Kosereis</u> would appear to
apply to claims that an employer failed to hire or failed to
promote, <u>Kosereis</u> actually involved claims much like the ones
Taite advances in this case.  <u>See</u> 331 F.3d at 212; <u>see also</u> <u>Hall</u>
<u>v. FMR Corp.</u>, ___ F. Supp. 2d ___, 2009 WL 3631611, at *8 (D.
Mass. Oct. 30, 2009) (employing prima facie case from <u>Kosereis</u>,
where plaintiff was employee who complained that: "(1) [her
employer] required [her] to report to work on time because of her
race; (2) he supervised her more intensely than he did her non-
African American co-workers; and that he discriminated against
her in matters of (3) workplace perquisites; (4) compensation and
salary increases; (5) the recording of her work; and (6) her
performance evaluation").

[17] The Secretary argues, not unpersuasively, that Taite's
relocation did not rise to the level of an adverse employment
action.  <u>See</u> <u>Marrero v. Goya of P.R., Inc.</u>, 304 F.3d 7, 23-25
(1st Cir. 2002).

up and walk around to relieve her pain and swelling.  Thus, the
burden shifts to Taite to produce evidence of pretext.

     In order to carry her burden of persuasion on pretext, Taite
must "demonstrate <u>either</u> that her [move] was (i) 'more likely
motivated' by discrimination than by the explanation proffered by
[defendant], <u>or</u> (ii) the proffered 'explanation [was] unworthy of
credence' in circumstances where the suspect denial, taken
together with other facts, suggests such a motivation."  <u>Straughn
v. Delta Air Lines, Inc.</u>, 250 F.3d 23, 35 (1st Cir. 2001)
(quoting <u>Tex. Dep't of Comty. Affairs v. Burdine</u>, 450 U.S. 248,
256 (1981)).

     According to Taite, the Secretary's explanation for her move
was pretextual because "the plaintiff was moved by Willoughby and
told that she is trouble because she is African American."  (Obj.
to Summ. J., at 30.)  Indeed, "[t]he burden of persuasion on
pretext may be met . . . by showing 'that discriminatory comments
were made by the key decisionmaker.' "  <u>Straughn</u>, 250 F.3d at 35
(quoting <u>Santiago-Ramos</u>, 217 F.3d at 55).

     In this case, however, Taite has produced no evidence to
support her claim that Willoughby told her she was trouble
because she is African American.  She makes that claim in her

unsworn objection to summary judgment, but she identifies no support in the summary judgment record.  She does not mention that statement in either the fact section of her objection or in her declaration, and while there could be support for her allegation somewhere in the record, it is Taite's obligation to identify that support, not the court's responsibility to search it out unaided.  The record does include at least one piece of evidence suggesting that Taite was once called "trouble," but that reference appears in an e-mail from Willoughby to Wilmot in which Willoughby reported that Tiffani Wessel said that Taite was "trouble."[18]  (See Obj. to Summ. J., Ex. 3.)  Based on a comprehensive review of the record, it appears that the only racial comments in this case were those Taite made to Willoughby. In sum, Taite's first attempt to demonstrate pretext is entirely unavailing.

Taite also attempts to demonstrate pretext by showing that "Morin was treated more favorably [after the calendar incident] than the plaintiff who is African American." (Obj. to Summ. J., at 30.)  "One method [of demonstrating pretext] is to produce evidence that the plaintiff was treated differently than other similarly situated employees."  Kosereis, 331 F.3d at 214.  But, "[t]o successfully allege disparate treatment, a plaintiff must

---

[18] Tiffani Wessel is also of African-American descent. (Taite Decl. ¶ 16.)

show 'that others similarly situated to [her] in all relevant
respects were treated differently by the employer.' " Id.
(quoting Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st
Cir. 1999; citing Rosado v. Radio Shack, Inc., 312 F.3d 532, 534
(1st Cir. 2002)).  "The examples of disparate treatment need not
be perfect replicas, but they must closely resemble one another
in respect to relevant facts and circumstances." Kosereis, 331
F.3d at 214 (brackets, international quotation marks and citation
omitted).


     Here, Taite and Morin were not similarly situated enough for
Willoughby's treatment of Taite to support an inference of racial
discrimination.  By Taite's own concession, Morin had more face-
to-face contact with clients than she did, which fully supports
Willoughby's explanation, offered to Taite shortly after her
move, that moving her would cause less client inconvenience than
would be caused by moving Morin.[19]  There is nothing suspect
about Willoughby's decision to move the employee with less client
contact (and less seniority).  Thus, Taite's second attempt to
demonstrate pretext also fails.

---

     [19] While the Secretary does not rely on this fact, it is
also undisputed that Morin had significantly more seniority than
Taite.  (Taite Dep., Vol. I, at 174-75.)

Because Taite has failed to produce evidence to show that the reasons given for moving her to the Admissions Office were pretextual, the Secretary is entitled to judgment as a matter of law on the portion of Count III based on the September 27 move.

### B. Taite's Move to Virginia Fuller's Office

The second basis for Taite's disparate-treatment claim is her October 11 relocation from the Admissions Office to Virginia Fuller's office.  The Secretary argues that even if Taite has established her prima facie case, she has failed to carry her burden of showing that the Secretary's reasons for that move are pretextual.

The Secretary's argument focuses on pretext, which assumes that Taite has established her prima facie case.  It is not at all clear, however, that Taite's move to Fuller's office was an adverse employment action for purposes of a Title VII claim.

In an "employment discrimination case premised on disparate treatment, it is essential for the plaintiff to show that the employer took a materially adverse employment action against him." Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996) (citing York v. City of Wichita Falls, 944 F.2d 236, 239-41 (5th Cir. 1991); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 885

(7th Cir. 1989)).  Moreover, "the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action."  Blackie, 75 F.3d at 725.  Rather,

> the employer must either (1) take something of
> consequence from the employee, say, by discharging or
> demoting her, reducing her salary, or divesting her of
> significant responsibilities, see Crady v. Liberty Nat.
> Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993);
> Connell [v. Bank of Boston], 924 F.2d [1169,] 1179
> [(1st Cir. 1991)], or (2) withhold from the employee an
> accouterment of the employment relationship, say, by
> failing to follow a customary practice of considering
> her for promotion after a particular period of service,
> see, e.g., Hishon v. King & Spalding, 467 U.S. 69, 75
> (1984).

Blackie, 75 F.3d at 725-26 (parallel citations omitted).

Here, by virtue of the October 11 move, Taite was placed in an office away from Morin, that was equipped with her special furniture and that was, in her own words, "really nice."  (Taite Dep., Vol. II, at 63.)  Taite's only complaint about working in Virginia Fuller's office is that she was segregated from the rest of the staff of the Fee Basis section.  But, she does not say how working in a different location from most other Fee Basis employees constituted an adverse employment action, much less a materially adverse action sufficient to meet the objective standard described in Blackie.  Thus, Taite has not established her prima facie case.

Even if Taite had established a prima facie case, her claim
would fail at step three of the <u>McDonnell Douglas</u> analysis.  The
Secretary gives the same reason for the October 11 move that he
gave for the October 27 move: Willoughby's need to keep Taite and
Morin apart while making sure that Morin remained easily
accessible to agency clients.  As with the first move, Taite has
also failed to produce evidence that the Secretary's explanation
for the second move was a pretext.

Because the October 11 move was not an adverse employment
action, and because Taite has failed to produce evidence to show
that the Secretary's explanation for that move was pretextual,
the Secretary is entitled to judgment as a matter of law on the
portion of Count III based on the October 11 move.

### C. Willoughby's Decision not to Pay Taite Overtime

The remaining basis for Taite's disparate-treatment claim is
Willoughby's decision to award her compensatory time rather than
overtime pay for the 7.5 extra hours she worked over the course
of her employment.  For purposes of summary judgment, the
Secretary assumes the dubious proposition that Taite's receipt of
compensatory time for her voluntary overtime work was an adverse
employment action,[20] and offers several non-discriminatory

---

[20] <u>See</u> <u>Rhodes v. Ill. Dep't of Transp.</u>, 359 F.3d 498, 505
(7th Cir. 2004) (holding that loss of a single day's pay "had

reasons for paying Morin overtime while affording Taite only
compensatory time.  Those reasons include the fact that the
billing backlog that created the need for overtime work arose in
Morin's area of responsibility and expertise, an area in which
Taite had yet to be trained.  The Secretary also points out that
Willoughby did not want Taite to work significant amounts of
overtime because Taite had used all of her allotted annual leave
and took additional leave without pay, and he did not want to pay
her premium wages when she often did not work her normal forty-
hour work week.

     Taite does not address any of the Secretary's explanations.
To the extent she engages on the issue of pretext at all, she
simply says that "Mr. Willoughby paid the Caucasian employee
overtime but did not pay the plaintiff who is African American
overtime compensation."  (Obj. to Summ. J., at 30.)  Taite's
attempt to demonstrate pretext by producing evidence of
differential treatment, see Kosereis, 331 F.3d at 214, is not
persuasive, because she and Morin were not similarly situated
with respect to overtime.  The work requiring overtime fell
within Morin's area of responsibility, not Taite's.  Taite was a
relatively new hire and had not been trained in the work that
required overtime.  During the seven months Taite worked for the

only a negligible impact on [plaintiff's] income, and did not
cause her material harm").

VAMC, she took fifty-seven hours of unpaid leave time, above and beyond her annual leave and sick leave, while Morin took no such leave.  All those factors, unrefuted by Taite, materially distinguish her from Morin with regard to the issue of overtime pay.

Because Taite has failed to produce evidence to show that the Secretary's explanations for not paying her overtime are pretextual, the Secretary is entitled to judgment as a matter of law on the portion of Count III based on Willoughby's failure to pay her overtime.

Counts IV, V, and VI

In Counts IV, V, and VI, Taite asserts three New Hampshire common-law causes of action under the aegis of the Federal Tort Claims Act ("FTCA").  Specifically, she seeks to recover for wrongful termination (Count IV), negligent infliction of emotional distress (Count V), and intentional infliction of emotional distress (Count VI).  The Secretary moves for summary judgment on three grounds: (1) to the extent that Taite's tort claims are based on either disability discrimination or racial discrimination, they are preempted by the Rehabilitation Act and Title VII; (2) to the extent that her tort claims are based on Willoughby's failure to pay her overtime, those claims lack merit

39

because there was no FLSA violation; and (3) Taite's tort claims
are barred by the FTCA because Taite never presented them to the
Veterans Administration before she filed suit.

The Secretary is entitled to dismissal of Counts IV, V, and
VI for yet another reason: this court's lack of subject matter
jurisdiction.  See McBee v. Delica Co., 417 F.3d 107, 137 (1st
Cir. 2005) (noting that "subject matter jurisdiction . . . which
goes to the fundamental institutional competence of the court . .
. can be raised sua sponte at any time"); Díaz-Rodríquez v. Pep
Boys Corp., 410 F.3d 56, 62 n.5 (1st Cir. 2005) (noting that
"federal courts . . . must 'monitor their jurisdictional
boundaries vigilantly' ") (quoting Am. Fiber & Finishing, Inc. v.
Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004).

The FTCA confers subject matter jurisdiction on the district
courts over tort claims against the United States.  See 28 U.S.C.
§ 1346(b)(1).  However, "[t]he authority of any federal agency to
sue and be sued in its own name shall not be construed to
authorize suits against such agencies on claims which are
cognizable under [28 U.S.C. §] 1346(b)."  28 U.S.C. § 2679(a).

Here, Taite has sued the Secretary of the Department of
Veterans Affairs, in his official capacity.  Thus, she has sued

40

the Department.  The Department, however, is not a proper

defendant.  See McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir.

2006) ("the district court correctly held that no FTCA claim can

lie against the FBI").  Moreover, without a proper defendant,

i.e., the United States, this court lacks subject matter

jurisdiction over Taite's tort claims.  Like the plaintiffs in

Roman v. Townsend, Taite "never timely named the United States as

the defendant in an FTCA suit and that fact alone is fatal to

[her] cause."  224 F.3d 24, 27 (1st Cir. 2000).  As the court of

appeals explained, "[i]t is clear . . . that the requirement that

a plaintiff sue the United States within the period of

limitations in an action brought under the FTCA is jurisdictional

in nature and thus non-waivable."  Id. at 28 (citing Allgeier v.

United States, 909 F.2d 869, 871 (6th Cir. 1990) ("Failure to

name the United States as defendant in an FTCA suit results in a

fatal lack of jurisdiction.")).  The Secretary is entitled to

dismissal of Counts IV, V, and VI because the court lacks subject

matter jurisdiction over the claims asserted therein.


     Moreover, even if the court were to excuse Taite's failure

to name the United States as the defendant in her tort claims,

see Childress v. Northrop Corp., 618 F. Supp. 44, 48 (D.D.C.

1985) (noting that "a federal agency is not a proper defendant in

a suit brought pursuant to the FTCA" but declining to grant

dismissal on that basis, as plaintiff was pro se and thus held
"to less stringent standards in pleading"), this court would
still lack jurisdiction over Taite's tort claims.  The FTCA
includes an exhaustion requirement, see 28 U.S.C. § 2675(a), and
a two-year statute of repose, see 28 U.S.C. § 2401, both of which
are jurisdictional.  See Acosta v. U.S. Marshals Serv., 445 F.3d
509, 513 (1st Cir. 2006) (explaining that the FTCA exhaustion
provision is "a non-waivable jurisdictional requirement")
(quoting Santiago-Ramirez v. Sec'y, Dep't of Def., 984 F.2d 16,
18 (1st Cir. 1993)); Skwira v. United States, 344 F.3d 64, 71
(1st Cir. 2003) ("It is well settled in this circuit that the
timely filing of an administrative claim pursuant to § 2401 is a
jurisdictional prerequisite to filing suit under the FTCA.")
(citations omitted).

     Here, it is undisputed that Taite never presented her tort
claims to the Department of Veterans Affairs (see Taite Dep.,
Vol. I, at 112), as required by 28 U.S.C. § 2675(a).  Thus, Taite
has not met the FTCA exhaustion requirement, and as a
consequence, this court lacks subject matter jurisdiction over
her tort claims.  See Acosta, 445 F.3d at 513.  In addition, more
than two years have passed since Taite's tort claims accrued.
Given that the FTCA's statute of repose "must be strictly
construed," Skwira, 344 F.3d at 73 (citing United States v.

42

Kubrick, 444 U.S. 111, 117–18 (1979), this court is "forever barred" from considering those claims, see 28 U.S.C. § 2401(b), leaving the court no alternative but to dismiss Counts IV, V, and VI. See Skwira, 344 F.3d at 71 ("failure to comply with the FTCA's statute of limitations means that the district court lacks subject matter jurisdiction to entertain the suit and must dismiss it") (citing Coska v. United States, 114 F.3d 319, 323 n.8 (1st Cir. 1997)).

Due to both Taite's failure to name the proper defendant and her failure to administratively exhaust her claims, this court lacks subject matter jurisdiction over the claims raised in Counts IV, V, and VI. Accordingly, the Secretary is entitled to judgment as a matter of law on those counts.

Count VII

Count VII is a retaliation claim, brought under both the Rehabilitation Act and Title VII. In her complaint, Taite identifies four instances of alleged retaliation:

> 71. Stephen Willoughby retaliated against the plaintiff by relocating her office to the [Admissions Office] and refusing to provide her with an accommodation for her physical disability after she complained about the (protected activity) physical assault and discriminatory treatment she suffered from Paula Morin and the VA management.

43

72.  Stephen Willoughby retaliated against the
plaintiff by refusing to pay her overtime pay after she
complained about the (protected activity) physical
assault and constantly being referred to as girl by
from Paula Morin.

73.  Stephen Willoughby retaliated against the
plaintiff by segregating her from the other employees
and telling her that she was trouble after she
complained about the (protected activity) physical
assault she suffered from Paula Morin.

74.  The Agency took adverse employment action
against the plaintiff after she filed a complaint of
protected activity, the physical assault by Morin and
discriminatory treatment based on the plaintiffs race
and disability by Stephen Willoughby.

(Am. Compl.)  It is not entirely clear from the complaint

precisely what Taite claims to have been her protected activity.


The Secretary, who understands Count VII to assert a

retaliation claim under Title VII only, advances several

arguments in support of his motion for summary judgment.

Specifically, he argues that Taite's complaint about Morin's

alleged assault to the VA police was not protected activity, that

Willoughby had already moved Taite to the Admissions Office

before he knew she had complained about racial discrimination,

and that with regard to the other alleged acts of retaliation,

Taite offers nothing beyond temporal proximity to refute the

Secretary's legitimate non-discriminatory reasons for taking

those various actions.

44

In her objection to summary judgment, Taite clarifies her
claim somewhat, indicating that the EEO complaint she filed with
the VA's Office of Resolution Management is the protected
activity on which her retaliation claim is based, and that her
EEO complaint was protected activity under both the
Rehabilitation Act and Title VII.

As a preliminary matter, because Taite did not amend her EEO
complaint to include a claim of disability discrimination until
approximately one month after she stopped working at the VAMC,[21]
she has no retaliation claim under the Rehabilitation Act.
Neither Willoughby nor any other VAMC employee could have
retaliated against Taite, by taking an adverse employment action
against her, for something she did after she had stopped working
for the VAMC.  Accordingly, the court turns to Taite's Title VII
retaliation claim.

With regard to retaliation, Title VII provides, in pertinent
part, that

> [i]t shall be an unlawful employment practice for an
> employer to discriminate against any of his employees .
> . . because [the employee] has opposed any practice
> made an unlawful employment practice by this

---

[21] Her protected conduct under the Rehabilitation Act took
place no earlier than December 6, 2006, the date on which she
wrote to the VA Office of Resolution Management to amend her EEO
complaint to add a claim of disability discrimination.

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Fantini v. Salem State Coll., 557 F.3d 22, 31-32 (1st Cir. 2009) (quoting 42 U.S.C. § 2000e-3). "In order to make out a prima facie case of retaliation, . . . [Taite has] to prove that (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." Fantini, 557 F.3d at 32 (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 22 (1st Cir. 2002). "[T]he employee's burden to establish a prima facie case in the retaliation context 'is not an onerous one.' " Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 858 (1st Cir. 2008) (quoting Calero-Cerezo, 355 F.3d at 26)). "Once the plaintiff establishes a prima facie showing of retaliation, the McDonnell Douglas burden-shifting approach applies." Enica, 544 F.3d at 343 (citation omitted).

The court begins by describing Taite's prima facie case. She has established the first element by producing evidence that she made initial contact with the VA's EEO office on September 27.[22]

_____

[22] Contrary to the statement in her objection to summary judgment, however, Taite did not file her EEO complaint on September 27. She initiated the complaint process by seeking informal counseling from George Irvin on that date, but her

Regarding the second element, an adverse employment action, Taite presents a moving target.  In her complaint, she identifies five: relocating her to the Admissions Office, denying her an accommodation for her disability, refusing to compensate her with overtime pay, segregating her from the other employees in the Fee Basis section, and telling her that she was trouble.[23]  In her objection to summary judgment, she mentions all but the "trouble" incident and adds several more: being shouted at by another VA employee on the day she was moved to the Admissions Office; Willoughby's failure to pick up her completed work; Willoughby's refusal to give her a new timekeeper; Wilmot's practice of telling her to speak to Willoughby when she brought complaints about Willoughby to Wilmot; the VA management's failure to investigate the calendar incident; Kathy Mason's statement that she lacked "service-line authority" when Taite sought redress from her; Willoughby's forcing her to walk a mile and a half from her parking space to the Admissions Office for the nine days she worked there; and Willoughby's failure to invite her to the October 26 department meeting.  Taite is not especially clear about when some of the allegedly retaliatory acts took place

---

complaint form is dated October 31, and the complaint was actually filed on November 13.

[23] As noted above, Taite has produced no evidence that Willoughby ever called her "trouble," much less that he told her she was trouble because she is an African-American.  Accordingly, that incident cannot be included in her prima facie case.

which is, of course, of vital importance in establishing the third element of her prima facie case, a causal relationship between her protected activity and the adverse employment actions.

While Taite has identified twelve alleged adverse employment actions, seven of them must be eliminated from her prima facie case because they founder on the third element, causation.  For the causation element to be satisfied, the employer must have taken the allegedly retaliatory employment action <u>after</u> the employee engaged in protected conduct.  <u>See</u> <u>Sabinson v. Trs. of Dartmouth Coll.</u>, 542 F.3d 1, 5 (1st Cir. 2008).  In addition, for an employment action to be retaliatory, the person taking that action must have known about the employee's protected conduct at the time he or she took the allegedly retaliatory action.  <u>See</u> <u>Pomales v. Celulares Telefónica, Inc.</u>, 447 F.3d 79, 85 (1st Cir. 2006) (holding that plaintiff failed to establish prima facie case because he produced "no evidence that . . . the CTI employee who discharged [him] had any knowledge that [he had engaged in protected activity]"); <u>Kosereis</u>, 331 F.3d at 217; <u>Santiago-Ramos</u>, 217 F.3d at 57-58; <u>King v. Town of Hanover</u>, 116 F.3d 965, 968 (1st Cir. 1997).  Application of the foregoing principles diminishes, by more than half, the list of employment actions that may properly be included in Taite's prima facie case.

Four alleged adverse employment actions cannot be included in Taite's prima facie retaliation case because they happened before she engaged in protected conduct by speaking with George Irvin.  Specifically, she spoke with Irvin after Willoughby moved her to the Admissions Office,[24] after Willoughby refused her request for overtime pay,[25] after Cheryl Stancil shouted at her,[26] and after Kathy Mason told her that she lacked "service-line

_____

[24] In her complaint, Taite alleges:

> Plaintiff filed her EEO complaint with George Irvin.  The complaint was filed on September 27, 2006, which was <u>one day after</u> the Plaintiff was assaulted and moved from her accommodated work station in Room 222 to the Emergency/Admissions Office, which had no accommodations for Plaintiff.

(Am. Compl. ¶ 26 (emphasis added).)  Taite confirmed that chronology in her deposition, stating that "My EEO complaint was brought when I saw that [Willoughby] had taken my accommodation from me."  (Taite Dep., Vol. I, at 239.)

[25] In her declaration, Taite states: "On September 15, 2006, I asked Mr. Willoughby why I wasn't paid overtime, but yet, he paid Paula Morin for overtime?  Mr. Willoughby responded that he did not have the money to pay me."  (Taite Decl. ¶ 8.)  Moreover, Willoughby first gave Taite compensatory time, in lieu of overtime pay, no later than mid July, which further undermines Taite's contention that Willoughby refused to allow her overtime pay in retaliation for filing her EEO complaint.

[26] According to Taite's complaint, the events of September 27 unfolded in this order: Taite had her confrontation with Stancil; she left the Admissions Office and went to her car where she called Assistant United States Attorney Elizabeth Woodcock; she returned to the Admissions Office and called Kathy Mason; and, finally, she called the Office of Resolution Management to file an EEO complaint.  (Am. Compl. ¶¶ 24-26.)  That chronology is confirmed by Taite's deposition (<u>see</u> Taite Dep., Vol. I, at 241-42), and Taite has produced no evidence that the incident with Stancil took place after she consulted with George Irvin.

authority."[27]  Accordingly, those four employment actions cannot be included in Taite's prima facie case.

Three more alleged adverse employment actions cannot be included in Taite's prima facie case because they happened after she spoke with George Irvin, but before Willoughby had learned about her conversation with Irvin.  For her part, Taite has produced no evidence tending to show when Willoughby learned about her protected conduct, i.e., the EEO complaint.  It is undisputed, however, that the complaint form was executed on October 31, and filed on November 13.  In view of the court's obligation to construe the record in the light most favorable to Taite, the court will assume that Willoughby learned of Taite's protected conduct on October 16, the date on which Irvin discussed ADR with him.  Because Taite was denied her special furniture only until October 11, was denied a new timekeeper no later than October 13 (see Obj. to Summ. J., Ex. 11), and was forced to park half a mile from her work station in the Admissions Office only until October 11, those actions could not have been in retaliation for her consultation with Irvin, given that Taite has not shown that Willoughby knew about her

---

[27] According to Taite's complaint, Kathy Mason made the comment about "service-line authority" in a telephone call that took place before she contacted Irvin (Am. Compl. ¶ 26), and that chronology is confirmed by Taite's declaration (see Taite Decl. ¶ 30).

consultation with Irvin any earlier than October 16.  As a result, those employment actions cannot be included in Taite's prima facie case.

Taite's claim that Wilmot retaliated against her by referring her back to Willoughby when she complained to Wilmot about Willoughby must also be dropped from Taite's prima facie case.  In her complaint, Taite alleges: "Whenever the Plaintiff complained to Joan Wilmot, about Mr. Willoughby's discriminatory treatment, she referred the Plaintiff back to Mr. Willoughby, the very person who allowed the discriminatory treatment to continue."  (Am. Compl. ¶ 34.)  She makes the very same allegation in the fact section of her motion for summary judgment (see Obj. to Summ. J., at 16), but the only support she offers is the paragraph from her unverified complaint quoted above.  Thus, there is no competent evidence to support that factual allegation.  Not only does the allegation lack record support, Taite has not produced any competent evidence concerning when Wilmot learned about her consultation with Irvin and when Wilmot redirected her to Willoughby.[28]

---

[28] Her declaration is silent on both of those factual matters.

51

Taite also states, in her objection to summary judgment, that Wilmot told her that the decision about Taite's timekeeper would be made by Willoughby which, conceivably, could be the basis for her allegation against Wilmot.  (Obj to Summ. J., at 15-16.)  But, according to the evidence Taite has produced, the e-mail in which Wilmot told Taite that Willoughby would decide the timekeeper issue was dated October 13, the same day on which the VAMC director was notified of Taite's initial consultation with Irvin and three days before Irvin discussed ADR with Willoughby.  Because Taite has not produced evidence that Wilmot redirected her to Willoughby after Wilmot learned of Taite's EEO consultation, that employment action cannot be included in Taite's prima facie case.

Based upon the foregoing, the alleged adverse employment actions in Taite's prima facie case are limited to: Willoughby's segregating her from other employees in the Fee Basis section, Willoughby's failure to pick up her completed work, the VA management's failure to investigate the calendar incident, and Willoughby's failure to invite her to the October 26 staff meeting.  Moreover, the failure-to-investigate component of Taite's prima facie is not supported by anything in Taite's pleadings or the record.  To the contrary, her complaint alleges that "the VA conducted an investigation."  (Am. Compl. ¶ 38; see

52

<u>also</u> Obj. to Summ. J., at 9 ("During the Agency's investigation .
. .").[29]  Accordingly, the failure-to-investigate element must
also be dropped from Taite's prima facie case.

The question now becomes whether the three employment
actions that undisputedly took place after Willoughby learned
about Taite's consultation with Irvin, and that are supported by
the record, constitute adverse employment actions sufficient to
establish a prima facie case.

In the Title VII context, "adverse employment action" is "a
shorthand for the statutory requirement that a plaintiff show an
alteration in the material terms or conditions of [her]
employment."  <u>Bergeron v. Cabral</u>, 560 F.3d 1, 7-8 (1st Cir. 2009)
(citing <u>Power v. Summers</u>, 226 F.3d 815, 820 (7th Cir. 2000); 42
U.S.C. § 2000e-2(a)(1)).  The Title VII "anti-retaliation
provision protects an individual not from all retaliation, but
from retaliation that produces an injury or harm."  <u>Billings v.
Town of Grafton</u>, 515 F.3d 39, 52 (1st Cir. 2008) (quoting
<u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 67 (2006)).
Thus, "to prevail on a claim of retaliation in violation of Title

---

[29] If Taite's failure-to-investigate claim is based upon the
allegedly tardy response of VA officials on the day of the
calender incident (<u>see</u> Am. Compl. ¶ 19), that alleged failure to
investigate cannot support a retaliation claim because it took
place on September 26, the day before Taite contacted Irvin.

VII, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Billings, 515 F.3d at 52 (quoting Burlington Northern, 548 U.S. at 68).  Regarding the materiality standard, the Supreme Court has said: "We speak of material adversity because we believe it is important to separate significant from trivial harms." Burlington Northern, 548 U.S. at 68.

Because the three remaining bases for Taite's retaliation claim are merely trivial harms, even when taken together, see Billings, 515 F.3d at 54 n.1, Taite has failed to establish a prima facie case of retaliation.

Regarding her "segregation" from other employees in the Fee Basis section, Taite says that Willoughby segregated her on October 11,[30] which was before he knew that Taite had spoken with Irvin.  Even giving Taite the benefit of a presumption that Willoughby kept Taite from moving back into the Fee Basis Office after October 16, in retaliation for her consultation with Irvin,

---

[30] As Taite states in her declaration: "On October 11, 2006, Stephen Willoughby move[d] me once again and segregated and isolated me from the other employees in the [Fee Basis] Office and told me that he did not want me back in the [Fee Basis] Office."  (Taite Decl. ¶ 22.)

that action was a trivial harm.  It is undisputed that the office
Taite moved to on October 11 was relatively close to the Fee
Basis Office, thus solving Taite's problem with the long walk
from her car to the Admissions Office.  It is also undisputed
that Taite's new office was "really nice," and that Willoughby
had her special furniture moved into it.  Given those amenities,
all that remains is Taite's displeasure at being separated from
other employees in the Fee Basis section, but "an employee's
displeasure at a personnel action cannot, standing alone, render
it materially adverse."  Billings, 515 F.3d at 53 (citing
Blackie, 75 F.3d at 725).  And, Taite has produced no evidence
from which a reasonable jury could find that she suffered an
objectively meaningful inconvenience or loss of prestige as a
result of her move to Virginia Fuller's office.  Regarding
Willoughby's alleged failure to pick up Taite's completed work,
it is undisputed that he missed one day, and that the problem was
corrected by noon of the following day.  Finally, regarding
Willoughby's alleged failure to invite Taite to the October 26
staff meeting, it is undisputed that at the time of the meeting,
Taite had already drafted her letter of resignation and notified
Kathy Mason of her decision to resign.  It is also undisputed
that nothing discussed at that meeting would have affected
Taite's ability to do her job for the remaining week of her
employment.

Either viewed individually or taken together, and in the light most favorable to Taite, the three acts or omissions on which she bases her retaliation claim simply do not amount to an alteration in the material terms and conditions of her employment.  No reasonable worker would be dissuaded from complaining about discrimination out of a fear of: (1) being separated from some other colleagues (including an antagonistic one) in a well-appointed office located near her parking spot; (2) having completed work picked up eight hours late on one occasion; and (3) not being invited to a staff meeting held after she had decided to resign, and one week before the effective date of her resignation.  Because Taite has not identified any materially adverse action taken against her as a result of her protected conduct, she has not established her prima facie case.

Even if Taite had established a prima facie case, her claim fails at the third step of the McDonnell Douglas analysis.  To begin, for reasons already given with respect to Counts II and III, Taite has failed to produce evidence that Willoughby's reasons for placing her in Virginia Fuller's office were pretextual.  Turning to the failure to collect Taite's work on October 23 and her exclusion from the October 26 staff meeting, there is evidence in the record that both omissions resulted from

56

simple oversights, and Taite has produced no evidence that the Secretary's explanations for them are pretextual.

Because Taite has failed to establish her prima facie case and because, even if she had done so, she has failed to produce evidence of pretext, the Secretary is entitled to judgment as a matter of law on the retaliation claim advanced in Count VII.

### Conclusion

For the reasons given, the Secretary's motion for summary judgment (document no. 32) is granted in part and denied in part. All that remains of this case is the FLSA claim stated in Count I.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 1, 2010

cc:  Brenda K. Taite, pro se
     Seth R. Aframe, Esq.